UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JUAN DAVID QUICHIMBO SUMBA, et al, <br><br> Plaintiffs, <br><br> v. <br><br> JOSEPH EDLOW, et al, <br><br> Defendants. | Case No. 25-cv-13911-BEM <br><br> **Leave to File Granted on February 5, 2026** |

## **DEFENDANTS' MOTION TO DISSOLVE THE TEMPORARY RESTRAINING ORDER**

Defendants respectfully move the Court to dissolve the temporary restraining order (TRO) issued without notice on February 4, 2026. Doc. No. 6. "[O]n a motion to dissolve a TRO, the party that obtained the TRO 'bears the burden of justifying the need for continued injunctive relief on a temporary basis.'" *Dolan v. Portaro*, No. 1:15-cv-01022, 2015 WL 3444351, at *1 (N.D. Ohio May 28, 2015); *see Lapa v. JP Morgan Chase Bank, N.A.*, No. 21-cv-04737 (NSR), 2022 WL 3290677, at *2 (S.D.N.Y. Aug. 11, 2022) ("On a motion to dissolve a temporary restraining order, the party that obtained the order bears the burden of justifying continued injunctive relief."). That includes demonstrating that "the Court has or had jurisdiction to issue the [TRO]." *H.H. v. Quin*, No. 3:25-cv-01360, 2025 WL 3539190, at *5 n.11 (M.D. Tenn. Dec. 10, 2025). As explained below, Plaintiffs' TRO motion improperly sought the same relief that another session of the Court (O'Toole, J.) had already denied just hours earlier. That decision was entitled to respect, not evasion. And, in any event, the Court lacked jurisdiction to grant the requested relief.

On December 1, 2025, Plaintiffs Juan David Quichimbo Sumba, Mirian Ximena Abarca Tixe, and their daughter, C.M.Q.A., filed a petition for a writ of habeas corpus seeking, among other things, an order staying Quichimbo Sumba's removal. *Quichimbo Sumba et al v. Noem et al*, No. 1:25-cv-13625-GAO (D. Mass.), ECF Doc. 1. On December 9, 2025, Plaintiffs filed an

amended pleading in that action under 28 U.S.C. § 2241 (the general habeas statute) and 28 U.S.C. § 1331 (the federal question statute), claiming that the government's detention and removal of Quichimbo Sumba while their application for a T-visa remains pending would violate the Administrative Procedure Act (APA), federal regulations, DHS and ICE policies, the Trafficking Victims Protection Act, and the Due Process Clause.  *See id.*, ECF Doc. 7.

As part of that action, Plaintiffs also sought a TRO and a preliminary injunction enjoining Defendants from removing Quichimbo Sumba from the country.  *See id.* at 19-21.  Plaintiffs argued that, absent a stay of removal, they would lose "their ability to pursue their pending T-Visa and to cooperate safely with trafficking investigations."  *Id.* at 20.  Accordingly, they claimed that they sought to stay Quichimbo Sumba's removal "only to preserve the status quo while their legal rights are adjudicated."  *Id.*

On December 19, 2025, Plaintiffs filed the instant action under the Mandamus Act and APA, claiming that U.S. Citizenship and Immigration Services (USCIS) has unreasonably delayed in making a bona fide determination on their pending application for a T-visa.  *See* Doc. No 1.

On February 4, 2026, another session of this Court (O'Toole, J.) held a status conference in Case No. 1:25-cv-13625-GAO, at which it denied Plaintiffs' petition.  *See* ECF Doc. 16.  It also denied Plaintiffs' motion for a TRO, "conclud[ing] that it lack[ed] jurisdiction to issue [the requested] relief."  *Id.*  The Court also advised that a "[s]tatement of reasons" would "follow."  *Id.*

A few hours later, dissatisfied with Judge O'Toole's ruling, Plaintiffs filed an ex parte motion for a TRO as part of this APA action.  *See* Doc. No. 5.  Just like the TRO motion before Judge O'Toole, the TRO motion in this case expressly seeks to challenge—indeed, stay—the government's execution of Quichimbo Sumba's removal order.  *See id.* at 1 ("Petitioners respectfully move ex parte for a [TRO] staying removal of . . . Juan David Quichimbo Sumba.").

Just like the TRO motion before Judge O'Toole, the TRO motion in this case argues that, without a stay, Plaintiffs will lose their ability to pursue their pending T-visa application. *See id.* at 3. And, just like the TRO motion before Judge O'Toole, the TRO motion in this case argues that it merely seeks "to preserve the status quo" pending the adjudication of their claims. *Id.* at 5.

As an initial and critically important matter, if Plaintiffs believe that Judge O'Toole's decision denying a stay of removal was wrong and that it will cause them imminent and irreparable harm, the proper course is to *appeal* that decision and seek an emergency stay of the judgment pending appeal from Judge O'Toole's session and—failing that—from the First Circuit. It is improper to circumvent both that decision and the appellate process by simply moving for the same relief before a different session. The Court should not endorse such an action. Remarkably, Plaintiffs admit and cite Judge O'Toole's decision to deny "the requested relief" as the reason why they are seeking the same relief from this session of the Court, Doc. No. 5 at 3, as though the proceedings before Judge O'Toole functioned like an exhaustion requirement. But the denial of a TRO by one session of the Court is not a proper basis to seek the same relief from another.

In any event, Judge O'Toole's determination that this Court lacks jurisdiction to stay Sumba's removal was clearly correct. The Immigration and Nationality Act strips district courts of jurisdiction "to hear any cause or claim" challenging "the decision or action" by the government to "execute removal orders." 8 U.S.C. § 1252(g). A "cause or claim" includes a motion for a TRO or a preliminary injunction. *See, e.g.*, *Alves Da Cruz v. Riordan*, No. 11-cv-10818-DPW, 2011 WL 1793381, at *2 (D. Mass. May 11, 2011); *Compere v. Riordan*, 368 F. Supp. 3d 164, 171 (D. Mass. 2019). And, here, the action challenged by the TRO motion is indisputably the government's decision to execute Sumba's removal order. Doc. No. 5 at 1 ("Petitioners respectfully move ex parte for a [TRO] staying removal of . . . Juan David Quichimbo Sumba."); *see also Imran v.*

3

*Harper*, No. 25-30370, 2026 WL 93131, at *1 (5th Cir. Jan. 13, 2026) ("A request for stay of removal is a challenge to a removal order."). Section 1252(g) therefore precludes the Court from exercising jurisdiction over Plaintiffs' stay request. *Compere*, 368 F. Supp. 3d at 170 ("the Court simply lacks jurisdiction to grant a stay of a final order of removal").

The fact that Plaintiffs seek a stay of removal "to preserve [the Court's] jurisdiction and prevent mootness of" their unreasonable-delay and mandamus claims does not create an exception to § 1252(g). A district court lacks "jurisdiction to issue . . . a stay [of removal]" even where removal would "render moot" claims over which it "properly has jurisdiction." *Tejada v. Cabral*, 424 F. Supp. 2d 296, 298 (D. Mass. 2006). After all, a district court's authority to stay governmental action in order to preserve its jurisdiction over a case derives from the All Writs Act. *See Rossello-Gonzalez v. Calderon-Serra*, 398 F.3d 1, 14 (1st Cir. 2004). Section 1252(g), however, applies "notwithstanding" the All Writs Act. 8 U.S.C. § 1252(g). Accordingly, the Court cannot stay Quichimbo Sumba's removal even as a means of preserving its jurisdiction over the underlying claims in this case. *Barrios v. Att'y Gen. of U.S.*, 452 F. App'x 196, 198 (3d Cir. 2011) ("This argument fails because § 1252(g) applies notwithstanding the All Writs Act.").

Finally, the TRO has caused and will continue to cause the government irreparable harm. The government has the obligation and authority to promptly execute Quichimbo Sumba's valid final order of removal. 8 U.S.C. § 1231. As the Supreme Court has explained, "[t]here is always a public interest in prompt execution of removal orders." *Nken v. Holder*, 556 U.S. 418, 436 (2009). "The continued presence of an alien lawfully deemed removable" thus harms the public by "permit[ing] and prolong[ing] a continuing violation of United States law." *Id.* (citation omitted). That is precisely what is happening here, as the TRO has already forced the government

4

to abruptly cancel its previously scheduled arrangements to execute Quichimbo Sumba's valid final order of removal.  *See* Doc. No. 5-1 at 1.

For these reasons, the Court should dissolve the TRO.

                                            Respectfully submitted,

                                            LEAH B. FOLEY
                                            United States Attorney

Dated:  February 5, 2026            By:    */s/ Michael L. Fitzgerald*
                                                            MICHAEL L. FITZGERALD
                                                            Assistant United States Attorney
                                                            U.S. Attorney's Office
                                                            1 Courthouse Way, Ste. 9200
                                                             Boston, MA 02210
                                                            (617) 748-3266
                                                            michael.fitzgerald2@usdoj.gov

## LOCAL RULE 7.1 CERTIFICATION

I certify that I have conferred with counsel for Plaintiffs, who oppose this motion.

                                              */s/ Michael L. Fitzgerald*
                                              MICHAEL L. FITZGERALD
                                              Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                                              */s/ Michael L. Fitzgerald*
                                              MICHAEL L. FITZGERALD
                                              Assistant U.S. Attorney