UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JUAN DAVID QUICHIMBO SUMBA, et al, <br><br> Plaintiffs, <br><br> v. <br><br> JOSEPH EDLOW, et al, <br><br> Defendants. | Case No. 25-cv-13911-BEM <br><br> **Leave to File Granted on February 9, 2026** |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION
<u>TO DISSOLVE THE TEMPORARY RESTRAINING ORDER</u>**

Plaintiffs' opposition raises two distinct issues: (1) a district court's authority to issue a stay to provide it time to *assess* its jurisdiction over a pending case and (2) a district court's authority to issue a stay to *preserve* its jurisdiction over a pending case.  Here, Defendants have not argued—and do not argue—that 8 U.S.C. § 1252(g) strips the Court of jurisdiction to hear this case, which claims that Defendants have unreasonably delayed in adjudicating Plaintiffs' applications for a T-visa.  *See* Doc. No. 1.  The Court therefore does not need to issue a stay of removal to *assess* whether it has jurisdiction over the claims in the complaint.

The relevant question, by contrast, is whether the Court has jurisdiction to issue a stay of removal to *preserve* its ability to adjudicate the claims in the complaint.  Plaintiffs "argue[] that if [Quichimbo Sumba] is deported," their claims in this lawsuit will "become[] moot." *Perez Romero v. Walker*, No. 2:26-cv-12-JES-NPM, 2026 WL 124308, at *2 (M.D. Fla. Jan. 16, 2026). "[T]herefore, to save [this] case," they claim that "the Court must stop the deportation." *Id.*

The fundamental problem with that argument is that a district court's authority to enjoin governmental action as a means of preserving its jurisdiction derives from the All Writs Act. *Rossello-Gonzalez v. Calderon-Serra*, 398 F.3d 1, 14 (1st Cir. 2004) ("Acting pursuant to [the All Writs Act], a federal court may issue an injunction as a means to preserve its jurisdiction.").  And § 1252(g) expressly applies "notwithstanding" the All Writs Act.  8 U.S.C. § 1252(g).  That is why "District Courts across the country have thus found that they are barred from staying removal, even when the court might otherwise have jurisdiction over the claims presented." *Mateo L. A. v. Nielson*, No. 19-cv-6609 (KM), 2019 WL 1003408, at *2 (D.N.J. Feb. 28, 2019) (collecting cases); *see, e.g.*, *Perez Romero*, 2026 WL 124308, at *2 ("this Court cannot use the All Writs Act to seize power that the INA expressly denies"); *Barrios v. Att'y Gen. of U.S.*, 452 F. App'x 196, 198 (3d Cir. 2011) ("This argument fails because § 1252(g) applies notwithstanding the All Writs Act.").

1

Nor can a district court issue a stay of removal pursuant to its inherent powers. Even if a district court had the inherent power to issue a stay of removal to preserve its jurisdiction over a pending case, "the exercise of an inherent power cannot be contrary to any express grant of or limitation on the district court's power contained in a rule or statute." *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016). And § 1252(g) plainly limits—indeed, forecloses—a district court's ability to exercise jurisdiction over a claim seeking to stay an individual's removal.

The Court addressed this precise issue in *Tejada v. Cabral*, 424 F. Supp. 2d 296 (D. Mass. 2006). Plaintiffs argue that "*Tejada* addressed whether a district court could issue a merits-based stay of removal under the All Writs Act after concluding that it lacked jurisdiction under § 1252(g)." Doc. No. 14 at 4. But that is clearly incorrect. In *Tejada*, the Court concluded that it *had* jurisdiction over the case. *Tejada*, 424 F. Supp. 2d at 298 ("This Court . . . properly has jurisdiction over Tejada's petition."). But the Court recognized that, "[e]ven though [it] properly ha[d] jurisdiction" over the case, it did not have jurisdiction over the petitioner's *motion* "to stay his deportation pending resolution" of the case. *Id.* at 297-298. And that remained true even though his removal would "render" the underlying case "moot." *Id.* at 298.

Similarly, the Fifth Circuit recently affirmed a district court's denial of a motion for a TRO based on § 1252(g), even though it found that the district court *had* jurisdiction to review the underlying detention-related claim in that case. *Imran v. Harper*, No. 25-30370, 2026 WL 93131 (5th Cir. Jan. 13, 2026). There, the appellant similarly "argue[d] that his request for a stay of removal 'simply sought to preserve the status quo so the [district] court [could] address his detention-related claim, without interfering or reversing the underlying removal order." *Id.* at *1. But the Fifth Circuit explained that "[a] request for stay of removal is a challenge to a removal order." *Id.* The district court therefore "lacked jurisdiction to grant such relief." *Id.*

2

Plaintiffs do not address the language of § 1252(g)—let alone attempt to show that their TRO motion falls outside its scope. Nor could they. Section 1252(g) strips district courts of jurisdiction "to hear any cause or claim" challenging "the decision or action" by the government to "execute removal orders." 8 U.S.C. § 1252(g). *Any* "cause or claim" includes a motion for a TRO/stay. *See, e.g.*, *Aziz v. Chadbourne*, No. 07-cv-11806-GAO, 2007 WL 3024010, at *1 (D. Mass. Oct. 15, 2007) (treating "plaintiff's emergency motion for a stay of removal" as a cause or claim covered by § 1252(g)); *Rauda v. Jennings*, 55 F.4th 773, 775 (9th Cir. 2022) (affirming "district court's order denying his request for a temporary restraining order to prevent the government from removing him from the United States"). Moreover, "[w]hen "asking if a claim is barred by § 1252(g), courts must focus on the action being challenged." *Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1272 (11th Cir. 2021) (citation omitted). And the action being challenged by the TRO motion is clearly the government's execution of Quichimbo Sumba's removal order. *See* Doc. No. 5 at 1. "That means their" TRO motion "fall[s] squarely within § 1252(g)'s jurisdictional bar." *Camarena*, 988 F.3d at 1272.

Indeed, this Court has time and again reaffirmed that it "cannot grant . . . a stay of removal because it lacks jurisdiction under § 1252." *Anderson v. Moniz*, No. 21-cv-11584-FDS, 2022 WL 375231, at *7 (D. Mass. Feb. 7, 2022); *see, e.g.*, *Candra v. Cronen*, 361 F. Supp. 3d 148, 160 (D. Mass. 2019) ("This Court simply does not have the jurisdiction to interfere with the execution of a removal order."); *Neufville v. Rhode Island*, No. 18-cv-10321-WGY, 2018 WL 1001016, at *2 (D. Mass. Feb. 21, 2018) ("this court lacks jurisdiction to issue a stay of removal"); *Nelson v. Hodgson*, No. 14-cv-10234-DJC, 2014 WL 2207621, at *2 (D. Mass. May 27, 2014) ("The provisions of the Real ID Act preclude this court from entering an order staying petitioner's removal."); *Martin v. U.S. Immigr. & Customs Enf't*, No. 13-cv-11329-DJC, 2013 WL 3282862,

3

at *3 (D. Mass. June 26, 2013) ("the provisions of 8 U.S.C. § 1252 precludes district courts from staying orders of deportation or removal").

Defendants acknowledge that § 1252(g) "does not apply" to "claims that are 'independent of any challenges to removal orders'"—including the claims in the instant complaint. *Vasquez v. United States*, No. 15-cv-3946 JGK, 2015 WL 4619805, at *4 (S.D.N.Y. Aug. 3, 2015) (citation omitted). "But the relief sought by the current motion [for a TRO] is a stay of [Quichimbo Sumba's] removal." *Id.* "Accordingly, whatever the merits of [Plaintiffs'] underlying claims, the Court does not have jurisdiction to grant *this motion*." *Id.* (emphasis added). Put another way, Defendants do not contend that § 1252(g) strips the Court of jurisdiction to decide the claims in the complaint. Rather, § 1252(g) strips the Court of jurisdiction over Plaintiffs' motion for a TRO.

Defendants also have not accused Plaintiffs of "judge shopping," as they assert. Doc. No. 14 at 3. The issue is the propriety of seeking a TRO from one session of the Court *because* another session has just denied the same relief. *See* Doc. No. 5 at 3; *Montoya Echeverria v. Barr*, No. 20-cv-02917-JSC, 2020 WL 2759731, at *5 (N.D. Cal. May 27, 2020) ("Petitioner elected to file a motion for release as a class member in *Zepeda-Rivas*—he cannot now seek the same relief before a different judge because he does not like the outcome of his application for release there."). If the TRO in this case was not a second attempt to obtain the relief that Judge O'Toole had just denied, then it is difficult to explain why Plaintiffs did not move for a TRO in this action much earlier and instead waited to do so until a few hours after Judge O'Toole denied their TRO request in No. 1:25-cv-13625-GAO. Plaintiffs emphasize that Judge O'Toole has yet to issue a "statement of reasons" for his decision, Doc. No. 14 at 3, and so it is unclear what, if any, formal claim-preclusion principles might apply. But where a plaintiff claims that another session's denial of his requested relief was "'not clear' because it was denied 'without prejudice and without any

4

reasoning,'" he should "seek[] clarification of the order," rather than filing "an entirely separate motion for release" before another session. *Montoya Echeverria*, 2020 WL 2759731, at *5.

In sum, Plaintiffs "may proceed with [their unreasonable-delay and mandamus claims] here," and Defendants do not doubt the Court's ability to "consider [their] claims as quickly as it is able." *Perez Romero*, 2026 WL 124308, at *2." "But if [they] wish[] to pause execution of [Quichimbo Sumba's] removal order, [they] must look elsewhere." *Id.* That remains true even though Plaintiffs seek to pause his removal only to preserve the Court's jurisdiction over this case. Simply put, "[w]hen Congress enacted § 1252(g), it made a policy choice to prioritize the finality of removal orders over the preservation of district court proceedings." *Lescaille v. Walker*, No. 2:26-cv-11-KCD-NPM, 2026 WL 83969, at *3 (M.D. Fla. Jan. 12, 2026).

Recognizing as much does not diminish "the seriousness of [Plaintiffs'] allegations" underlying their applications for a T-visa. *E.F.L. v. Prim*, 986 F.3d 959, 966 (7th Cir. 2021) (citation omitted); *see* Doc. No. 1 at 2 (alleging that Quichimbo Sumba was a "victim of severe labor trafficking"). The Court simply "cannot provide [Plaintiffs] the relief that [they] seek[]." *Id.* One can "understand" Plaintiffs' "efforts to avail themselves of the" process for obtaining a T-visa and to remain in the country while doing so. *Camarena*, 988 F.3d at 1274 (Wilson, J., concurring). "Nevertheless, the law here is not on their side." *Id.* The Court should therefore dissolve the TRO.

                        Respectfully submitted,

                        LEAH B. FOLEY
                        United States Attorney

Dated: February 9, 2026        By:    */s/ Michael L. Fitzgerald*
                                        MICHAEL L. FITZGERALD
                                        Assistant United States Attorney
                                        U.S. Attorney's Office

1 Courthouse Way, Ste. 9200
Boston, MA 02210
(617) 748-3266
michael.fitzgerald2@usdoj.gov

**CERTIFICATE OF SERVICE**

    I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Michael L. Fitzgerald*
MICHAEL L. FITZGERALD
Assistant U.S. Attorney