UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JUAN DAVID QUICHIMBO SUMBA, *et al.*, <br><br>　　　　Plaintiffs, <br><br>　　v. <br><br>JOSEPH EDLOW, *et al.*, <br><br>　　　　Defendants. | Civil Action No. <br> 25-13911-BEM |

**MEMORANDUM AND ORDER**
**ON MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER**

**MURPHY, J.**

Defendants have moved to dissolve the temporary restraining order, issued ex parte. Dkt. 12. For the reasons stated herein, the Court will deny the motion.

**I.   Background**

Plaintiffs are a family, two adults and one child, who submitted applications for T non-immigrant status (commonly known as "T visas") in August 2024.[1] Dkt. 1-3. Plaintiffs allege that Defendants, including U.S. Citizenship and Immigration Services ("USCIS"), which adjudicates T visa applications, have unreasonably delayed determining whether Plaintiffs' T visa applications are "bona fide," meaning properly filed, complete, and presenting prima facie eligibility. Dkt. 1 ¶¶ 1–3, 16. Plaintiffs seek to compel Defendants to make that determination and assert claims under the Mandamus and Administrative Procedure Acts. *Id.* ¶¶ 25–37.

---

[1] T visas are a form of relief available to victims of human trafficking and their dependents. 8 U.S.C. § 1101(a)(15)(T). Congress created T visas "to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims." 22 U.S.C. § 7101(a).

On February 4, 2026, Plaintiffs moved, ex parte, for an emergency temporary restraining order, stating that Plaintiff Juan David Quichimbo Sumba was at risk of immediate removal, based on a disclosure made by the Government in a related habeas action, which has since been dismissed.[2]  Dkt. 5 at 2–3.  The parties agree that Mr. Quichimbo's removal would moot the family's pending T visa applications and thus defeat this Court's jurisdiction to hear their claims of unreasonable delay.  *See* Dkt. 19 at 1.

To preserve the status quo and allow time to address the issues, the Court granted Plaintiffs' motion, restraining Defendants from removing Mr. Quichimbo.  Dkt. 6.  Defendants promptly moved to dissolve the order.  Dkt. 10–12; *see also* Dkt. 14 (Plaintiffs' opposition); Dkt. 17 (Defendants' reply).  Following a hearing on February 9, 2026, Dkt. 18, the parties submitted a joint status report, clarifying several legal issues raised during the hearing, Dkt. 19.

## II.  Discussion

"Defendants have not argued—and do not argue—that" the Court lacks jurisdiction to hear Plaintiffs' claims.  Dkt. 17 at 2.  Rather, they argue that it lacks jurisdiction (or, perhaps more precisely, authority) to issue an order with the practical effect of staying removal.  *See* Dkt. 12 at 3–4; *see also* Dkt. 17 at 5 ("[T]he Court does not have jurisdiction to grant *this motion*." (emphasis added) (quoting *Vasquez v. United States*, 2015 WL 4619805, at *4 (S.D.N.Y. Aug. 3, 2015))).  Defendants rely on 8 U.S.C. § 1252(g) ("section 1252(g)"), which is titled "Exclusive jurisdiction," and which states:

---

[2] *See Quichimbo Sumba v. Noem*, 2026 WL 357649 (D. Mass. Feb. 9, 2026) (memorializing the February 4 dismissal).  Plaintiffs' habeas petitions were filed on December 1, 2025.  *Id.* at *1.  Their action in this Court was filed on December 19, 2025, Dkt. 1, thus after their habeas actions but not in response to their dismissal.

2

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including [the federal habeas statute, 28 U.S.C. § 2241], or any other habeas corpus provision, and [the Mandamus and All Writs Acts, 28 U.S.C. §§ 1361, 1651], no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

### A.   Section 1252(g) Limits Subject Matter Jurisdiction, Not Remedial Authority

Defendants' argument rests on a misreading of section 1252(g) as a remedial limitation, rather than what it is: a "*jurisdiction*-limiting provision[]." *Kong v. United States*, 62 F.4th 608, 616 (1st Cir. 2023) (emphasis added); *see* 8 U.S.C. § 1252(g) ("[N]o court shall have *jurisdiction*." (emphasis added)). More precisely, section 1252(g) withdraws federal courts' jurisdiction to hear claims arising from "three discrete actions that [the Government] may take: [its] 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphases in original) (quoting 8 U.S.C. § 1252(g)). Defendants agree that subject matter jurisdiction is not lacking in this case. Dkt. 17 at 2. Thus, section 1252(g) simply has no application.

Defendants point to section 1252(g)'s reference to the All Writs Act ("notwithstanding . . . title 28 . . . section[] . . . 1651") as proof that the statute's prohibition extends beyond subject matter jurisdiction to certain remedies. Dkt 5 at 4; *see also Compere v. Riordan*, 368 F. Supp. 3d 164, 170 (D. Mass. 2019) ("[T]he Court simply lacks jurisdiction to grant a stay of a final order of removal."). It is a court's "duty to give effect, if possible, to every clause and word of a statute." *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (internal quotation marks omitted) (quoting *United States v. Menasche*, 348 U.S. 528, 538–39 (1955)). Defendants are, moreover, correct that the All Writs Act does not provide this Court with an independent "font of jurisdiction." *United States v. Denedo*, 556 U.S. 904, 914 (2009). Thus, section 1252(g)'s mention of it, in an otherwise jurisdictionally minded provision, warrants some explanation.

3

B.     **The All Writs Act and Prospective Jurisdiction**

To that end, there is an important and relevant context wherein the All Writs Act *does* provide jurisdiction, or at least something akin to it: appellate review of agency action. In that arena, an "appellate court 'is not confined to the issuance of writs in aid of a jurisdiction already acquired by appeal but extends to those cases which are within its appellate jurisdiction although no appeal has been perfected.'" *F.T.C. v. Dean Foods Co.*, 384 U.S. 597, 603 (1966) (quoting *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 25 (1943)). In those instances, the appellate court's power "derive[s] . . . not from the" authority by which it ultimately reviews the final agency action "but from the All Writs Act." *Id.* at 608.

In *Dean Foods*, the Supreme Court held that the Seventh Circuit had authority, under the All Writs Act, to enjoin the consummation of a merger that was then under examination by the Federal Trade Commission. *Id.* at 603–05. The Court found that the Seventh Circuit had such authority even though the Clayton Act granted appellate jurisdiction only to review "final orders by the Commission." *Id.* at 604. "It must be remembered," the Court wrote, "that the courts of appeals derive their power to grant preliminary relief here not from the Clayton Act, but from the All Writs Act." *Id.* at 608. As a result, the Clayton Act "had no effect" on the Seventh Circuit's authority to issue injunctions pursuant to its prospective jurisdiction. *Id.* at 609.

To anyone familiar with the Immigration and Nationality Act ("INA"), this should sound familiar. Under the INA, courts of appeals have statutory jurisdiction only to review "final orders of removal." *Reyes-Ramos v. Garland*, 57 F.4th 367, 369 (1st Cir. 2023). Nevertheless, at least prior to the passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), a court of appeals might have "invoke[d] its injunctive powers under the All Writs Act so as to preserve its *potential* jurisdiction to review orders of deportation," even where the

4

merits of a final order were not yet before it. *Michael v. I.N.S.*, 48 F.3d 657, 663 (2d Cir. 1995) (emphasis added) (citing *Reid v. INS*, 766 F.2d 113, 116 n.9 (3d Cir. 1985)).

IIRIRA, which enacted section 1252(g), eliminated (or at least erected a significant barrier against) this possibility with its clear statement regarding the All Writs Act. *See Barrios v. Att'y Gen. of the U.S.*, 452 F. App'x 196, 198 (3d Cir. 2011) ("Barrios reasons that, without such a stay, the government may have removed him from the United States, causing his motion to reopen to be withdrawn . . . . This argument fails because § 1252(g) applies notwithstanding the All Writs Act."). Section 1252(g)'s direct mention of the statute provides an "explicit direction from Congress," repealing authority that a court of appeals might have otherwise "derive[d] . . . from the All Writs Act." *Cf. Dean Foods*, 384 U.S. at 608.

Indeed, in *Barrios v. Attorney General*, the Third Circuit directly recognized this effect. *See* 452 Fed. App'x at 198 n.6. While the court acknowledged its pre-IIRIRA holding, that a court of appeals had the authority to "stay removal under the All Writs Act," *id.* (citing *Reid*, 766 F.2d at 116 n.9), it pointed out that "*Reid* was decided in 1985, before the enactment of § 1252(g)" and that, "[c]onsequently, § 1252(g), not *Reid*, control[led]," *id.*[3] *Barrios* thus demonstrates how section 1252(g) effectively overruled *Reid* and similar cases, withdrawing courts of appeals' prospective jurisdiction under the All Writs Act for purposes of staying removal.

Importantly, however, section 1252(g) did not affect the *remedial* scope of the All Writs Act. Indeed, even after IIRIRA, "courts of appeals considering a petition for review of a removal order"—drawing their authority from the All Writs Act—"may prevent that order from taking

---

[3] *Michael v. I.N.S.*, 48 F.3d 657 (2d Cir. 1995), which quotes from *Reid* and follows its logic, *id.* at 663–64 (citing 766 F.2d at 116 n.9), was likewise decided before IIRIRA's passage in 1996. At least one court has similarly recognized its supersession. *See De Souza v. Sessions*, 2018 WL 11235102, at *1 (D. Conn. July 30, 2018) ("I agree that subject matter jurisdiction is lacking. . . . Plaintiff cites *Michael v. INS* . . . but that case predates important changes to the statute brought about by [IIRIRA]."), *vacated and remanded as moot sub nom.*, *De Souza-De Queiroz v. Barr*, 776 F. App'x 34 (2d Cir. 2019).

5

effect and therefore block removal while adjudicating the petition." *Nken v. Holder*, 556 U.S. 418, 425–26 (2009). However, to exercise such power now, a court of appeals must have a jurisdictional foundation *other than* prospective jurisdiction under the All Writs Act. *See Barrios*, 452 Fed. App'x at 198 (holding that the "BIA's denial of a stay of removal . . . 'is a component of the decision to execute a removal order'" (quoting *Moussa v. Jenifer*, 389 F.3d 550, 554 (6th Cir. 2004))). Where a court of appeals has jurisdiction, for example, by way of a petition for review of a final order of removal, its remedial power under the All Writs Act is unchanged.[4] *Arevalo v. Ashcroft*, 344 F.3d 1, 6 (1st Cir. 2003).

With that explanation in hand, section 1252(g) makes sense. Undeniably, the semantic core of the provision is jurisdictional in nature: "no court shall have jurisdiction." 8 U.S.C. § 1252(g). Section 1252(g)'s reference to the All Writs Act may, at first, appear strange in the district court context, but that is only because district courts are generally unaccustomed to issuing orders in the absence of an underlying case or controversy with "perfected" jurisdiction.[5] *Cf. Dean Foods*, 384 U.S. at 603. When a district court invokes the All Writs Act, it must do so in aid of jurisdiction that it already has. *See, e.g.*, *United States v. Morgan*, 346 U.S. 502, 505 & n.4 (1954) (explaining that district courts' jurisdiction over writs of coram nobis extends from their jurisdiction over criminal proceedings). By contrast, courts of appeals can issue orders under the All Writs Act based on prospective, or "potential," jurisdiction that it might someday obtain.

---

[4] To make clear the contrast, *Michael* (pre-IIRIRA) and *Barrios* (post-IIRIRA) each concerned, in relevant part, a direct application to a court of appeals, seeking a stay removal, separate from any challenge to the order of removal itself. *See Michael*, 48 F.3d at 661–62; *Barrios*, 452 F. App'x at 197.

[5] There are interesting exceptions. For example, district court judges (and, more often, magistrate judges) issue warrants, *see* Fed. R. Crim. P. 1(c), 41(b), even though a warrant is not "necessarily or directly connected to adversarial proceedings," *Mistretta v. United States*, 488 U.S. 361, 389 n.16 (1989). Insofar as federal warrants are issued based on violations of federal law, *see* 18 U.S.C. § 3103a(a), over which a district court may eventually obtain jurisdiction, *see United States v. Garcia-Garcia*, 354 F. App'x 434, 436 (1st Cir. 2009), one might (but usually does not) say that search warrants are issued in aid of a district court's prospective jurisdiction. *Cf. Lord v. Kelley*, 223 F. Supp. 684, 689 (D. Mass. 1963) (discussing courts' "anomalous jurisdiction" over seized property).

*Michael*, 48 F.3d at 663.  This is the jurisdiction that section 1252(g) partially withdraws.  *See Barrios*, 452 F. App'x at 198 & n.6.

### C.     The Court Retains Remedial Authority Under the All Writs Act

It follows that section 1252(g), a "jurisdiction-limiting provision[]," *Kong*, 62 F.4th at 616, does not affect this Court's remedial authority, under the All Writs Act or otherwise, where jurisdiction undisputedly exists.[6]  Defendants' contrary suggestion that the Court must establish its jurisdiction on a motion-by-motion basis, Dkt. 17 at 4–5, is "not just oblique but simply bizarre."  *Cf. Badgerow v. Walters*, 596 U.S. 1, 15 (2022).  "A motion . . . is part of a case."  *Id.*  "Jurisdiction to decide the case includes jurisdiction to decide the motion."  *Id.*

Of course, "[t]he term 'jurisdiction' is notoriously malleable and is used in a variety of contexts . . . that have nothing to do with the court's subject matter jurisdiction."  *United States v. Gonzalez*, 311 F.3d 440, 443 (1st Cir. 2002) (emphasis removed).  As the *Gonzalez* court noted, "jurisdiction" can simply mean "something akin to 'authority over.'"  *Id.* (quoting *Jurisdiction*, BLACK'S LAW DICTIONARY 855 (7th ed. 1999)).  However, courts generally must "presume that Congress 'says in a statute what it means and means in a statute what it says there.'"  *Rotkiske v. Klemm*, 589 U.S. 8, 13–14 (2019) (quoting *Conn. Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992)).  Moreover, the remainder of section 1252 more than demonstrates that Congress knew, when crafting IIRIRA, the difference between jurisdictional and remedial limitations.  *See, e.g.*, 8 U.S.C. § 1252(f) ("Limit on injunctive relief").

---

[6] Of course, this type of agreement will not always be the case, particularly because "[t]he words 'arising from' do not lend themselves to precise application."  *See Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 10 (1st Cir. 2007) (discussing another provision of section 1252, using similar nexus language).  Thus, it is not always a straightforward exercise to say whether a "cause or claim . . . aris[es] from" one of the acts set forth in section 1252(g).  *See, e.g.*, *Candra v. Cronen*, 361 F. Supp. 3d 148, 156–57 (D. Mass. 2019) (concluding that section 1252(g) barred a habeas petition but not related APA and constitutional claims brought by the petitioner's children).

7

Accordingly, where "Defendants acknowledge that [section] 1252(g) does not apply to . . . the claims in the instant complaint," Dkt. 17 at 5, the Court concludes that section 1252(g) presents no bar and so is not a valid reason to dissolve the temporary restraining order.

Nevertheless, although the Court remains satisfied that its current order is justified by the law, the exigencies of the situation, and the facts available, that relief is always subject to defeasance and is, by definition, temporary. *See* Fed. R. Civ. P. 65(b). Plaintiffs have not moved for any further relief, and so the Court has not pre-determined whether any will be necessary or appropriate.

### III.  Conclusion

For the reasons stated herein, Defendants' motion to dissolve the temporary restraining order is DENIED.

**So Ordered.**

/s/ Brian E. Murphy
Brian E. Murphy
Dated:  February 12, 2026                     Judge, United States District Court