**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **JUAN DAVID QUICHIMBO SUMBA, et al.,** ) ) ) ) | |
| **Plaintiffs,** ) ) | **Civil Action No.** |
| **v.** ) ) | **25-13911-BEM** |
| **JOSEPH EDLOW, et al.,** ) ) ) | |
| **Defendants.** ) ) | |

**MEMORANDUM AND ORDER**
**ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**MURPHY, J.**

Plaintiff Juan David Quichimbo Sumba is a victim of human trafficking, as determined by the federal government.[1]  There is no suggestion of his having any criminal history.  Based on Mr. Quichimbo's status as a victim of human trafficking and on his cooperation with a federal investigation, also attested to by the federal government, Mr. Quichimbo and his family applied for T nonimmigrant status (more commonly known as "T visas").[2]  T visas are a form of relief available to victims of human trafficking and their dependents.  8 U.S.C. § 1101(a)(15)(T). Congress created T visas "to combat trafficking in persons, a contemporary manifestation of slavery . . . to ensure just and effective punishment of traffickers, and to protect their victims." 22 U.S.C. § 7101(a).

---

[1] *See* Dkt. 24-1.

[2] *See* Dkt. 1-3.

Plaintiffs filed this action, under the Mandamus and Administrative Procedure Acts, alleging unreasonable delay by U.S. Citizenship and Immigration Services ("USCIS") in processing their T visa applications and asking the Court to compel USCIS to determine whether Plaintiffs' applications are "bona fide," meaning properly filed, complete, and presenting prima facie eligibility.  Dkt. 1 ¶¶ 1–3, 16.  A positive bona fide determination ("BFD") triggers certain legal benefits, including an automatic stay of removal for any applicant with a final order of removal, until an ultimate decision is reached on the underlying T visa application.  *See* 8 C.F.R. § 214.205(a)(2)(iii).

When Mr. Quichimbo learned that his removal was imminent, Plaintiffs moved ex parte for an emergency temporary restraining order to prevent Mr. Quichimbo's removal.[3]  Dkt. 5.  The Court granted Plaintiffs' motion, restraining the removal, Dkt. 6, but gave leave for Defendants to file a motion to dissolve the following day, Dkt. 11.[4]  Defendants then moved to dissolve the temporary restraining order, principally arguing that, although the Court had subject matter jurisdiction over Plaintiffs' unreasonable-delay claims, it lacked jurisdiction under 8 U.S.C. § 1252(g) ("section 1252(g)") to consider Plaintiffs' motion for an order preventing Mr. Quichimbo's removal.  *See generally* Dkt. 12; *see also* Dkts. 14, 17–19 (additional briefing and clerk's notes for the February 10, 2026 hearing).

The Court denied Defendants' motion to dissolve, concluding that, "where 'Defendants acknowledge that [section] 1252(g) does not apply to . . . the claims in the instant complaint,' . . . section 1252(g) presents no bar and so is not a valid reason to dissolve the temporary restraining

---

[3] Plaintiffs learned of Mr. Quichimbo's imminent removal through a disclosure made in a parallel habeas proceeding, which petition was denied by another session of this court.  *See Quichimbo Sumba v. Noem*, 2026 WL 357649, at *1 (D. Mass. Feb. 9, 2026).

[4] Defendants in this case are USCIS; the Department of Homeland Security ("DHS"); Kristi Noem, as DHS Secretary; and Joseph Edlow, as USCIS Director.  Dkt. 1. ¶¶ 11–14.

order." *Quichimbo Sumba v. Edlow*, — F. Supp. 3d —, 2026 WL 395033, at *5 (D. Mass. Feb. 12, 2026) (first alteration in original) (quoting Dkt. 17 at 5).

Plaintiffs have since moved for a preliminary injunction, asking the Court to enjoin Defendants from removing Mr. Quichimbo before USCIS makes a BFD on his T visa application. Dkt. 21. Defendants oppose, re-raising their jurisdictional objection and arguing that Plaintiffs are unlikely to succeed on their underlying claims. *See generally* Dkt. 23. Due to the expedited nature of this matter, the Court has made its decision on the papers.

Although the Court concludes that it has jurisdiction to consider Plaintiffs' request, the Court finds that Plaintiffs have not shown a likelihood of success on their underlying claims. The Court will therefore deny Plaintiffs' motion.

## I.    <u>Legal Standard</u>

"[T]he issuance of preliminary injunctive relief is 'an extraordinary and drastic remedy that is never awarded as of right.'" *Howe v. U.S. Bank Nat'l Ass'n as Tr. for RMAC Tr. Series 2016-CTT*, 440 F. Supp. 3d 99, 102 (D. Mass. 2020) (quoting *Peoples Fed. Sav. Bank v. People's United Bank*, 672 F.3d 1, 8–9 (1st Cir. 2012)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Together Emps. v. Mass Gen. Brigham Inc.*, 32 F.4th 82, 85 (1st Cir. 2022) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). However, "in a case like this one, where the Government is the party opposing the preliminary injunction," the last two factors merge. *Devitri v. Cronen*, 289 F. Supp. 3d 287, 297 (D. Mass. 2018) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

Of the four factors, likelihood of success "weighs most heavily" in the analysis. *Ryan v. U.S. Immigr. & Customs Enf't*, 974 F.3d 9, 18 (1st Cir. 2020). In deciding a motion for preliminary

injunction, the Court "has broad discretion in deciding what evidence to consider." *Rice v. Wells Fargo Bank, N.A.*, 2 F. Supp. 3d 25, 31 & n.34 (D. Mass. 2014) (citing *Asseo v. Pan Am. Grain Co.*, 805 F.2d 23, 26 (1st Cir. 1986)).

## II.    Discussion

### A.    The Court Has Jurisdiction to Consider the Motion

#### 1.    Section 1252(g) Does Not Bar Plaintiffs' Motion

Section 1252(g) does not bar this Court from considering Plaintiffs' motion for preliminary injunction, which presents neither a "cause" nor a "claim" and which does not "aris[e] from" the execution of Mr. Quichimbo's removal order. *Cf.* 8 U.S.C. § 1252(g). Section 1252(g) is titled "Exclusive jurisdiction" and states:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including [the federal habeas statute, 28 U.S.C. § 2241], or any other habeas corpus provision, and [the Mandamus and All Writs Acts, 28 U.S.C. §§ 1361, 1651], no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

*Id*. As relevant here then, section 1252(g) withdraws a court's "jurisdiction" over "cause[s] or claim[s]" that "aris[e] from the decision or action . . . [to] execute [a] removal order[]." *See id.*

4

### a.    Plaintiffs' Motion Does Not Present a "Claim"

For section 1252(g) to preclude the Court's consideration of Plaintiffs' motion for a preliminary injunction, that motion must constitute a "cause or claim."  8 U.S.C. § 1252(g). Defendants argue that Plaintiffs' motion constitutes a "claim."[5]  Dkt. 23 at 7–8.  It does not.

As a starting point, claims are generally found in pleadings, not motions.  *Compare* Fed. R. Civ. P. 8(a) ("Claim for Relief"), *with* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion.").  "There are generally two types of documents that are appropriately filed in a court: pleadings (complaints, answers, counterclaims, etc.) which either state a claim or respond to a claim, and motions (oppositions, responses, etc.) which are used to bring before a court for resolution disputes involving the claims in the case or the procedures to be followed." *Pigford v. Veneman*, 225 F.R.D. 54, 59 (D.D.C. 2005); *see also Durkin v. Shea*, 957 F. Supp. 1360, 1371 (S.D.N.Y. 1997) ("Claims must be asserted in pleadings, not in briefs on motions.").

This distinction reflects more than legal papers' styling: a "claim" is the "assertion of an existing right," *Claim*, *Black's Law Dictionary* (7th ed. 1999), whereas a request made by

---

[5] Defendants start from the premise that "[s]ection 1252(g)'s reference to 'any cause *or* claim' confirms that it covers more than just causes of action and extends to claims of any kind." Dkt. 23 at 7 (emphasis in original) (quoting 8 U.S.C. § 1252(g)).  This argument has two problems.  First, insofar as it relies on the rule against surplusage, which normally "instructs that [courts] must give independent meaning to each word in a statute and treat none as unnecessary," *O'Connor v. Oakhurst Dairy*, 851 F.3d 69, 73 (1st Cir. 2017), Defendants fail to appreciate that legal doublets are a common exception, *see* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 176–77 (2012).  Second, insofar as the argument relies on the meaningful-variation canon, which normally instructs that "different term[s] denote[] . . . different idea[s]," *see* Scalia & Garner, *supra* note 5, at 170, Defendants fail to appreciate that "claim" and "cause of action" can be used "synonymously," even in the same statute, *see, e.g.*, *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 313 (2011) (quoting *Keene Corp. v. United States*, 508 U.S. 200, 210 (1993)).

Nevertheless, the Court would agree with Defendants on this point, at least to the extent that section 1252(g) extends to "claims" beyond those that "cause" an "action."  *See* 8 U.S.C. § 1252(g).  For one quick example, in this section, the Court discusses "claims" for attorneys' fees.  *See* Fed. R. Civ. P. 54(d)(2).  A litigant could not assert that the Government's "decision . . . to . . . execute [his] removal order[]" inequitably increased the cost of his litigation (in whatever suit) such that an award of fees was warranted because such a "claim" would "aris[e] from" that "decision," even though it would not necessarily "cause" an "action."  *See* 8 U.S.C. § 1252(g).  But even if one accepts that not all "claims" are "cause[s] of action," *but see Tohono O'Odham Nation*, 563 U.S. at 313, that does not itself expand the meaning of the word "claim."

"'motion' inevitably suggests that there is already in being some case in the course of which the motion is pleaded as a second or later procedural step," *Lord v. Kelley*, 223 F. Supp. 684, 688 (D. Mass. 1963). The distinction is thus one of dependency: a legal right can—indeed, must—exist before it is presented as a "claim" in a lawsuit. *See Lab. Rels. Div. of Constr. Indus. of Mass., Inc. v. Healey*, 844 F.3d 318, 326 (1st Cir. 2016) ("[A] claim is ripe only if the party bringing suit can show both that the issues raised are fit for judicial decision at the time the suit is filed."). By contrast, a "motion . . . bring[s] before the court for ruling some material but incidental matter arising in the progress of the case in which the motion is filed." *In re Wild*, 994 F.3d 1244, 1257 (11th Cir. 2021).

The Court has identified only one exception to this general rule, which nonetheless reinforces the overarching principle: a "claim for attorney's fees," which generally "must be made by motion."[6] *See* Fed. R. Civ. P. 54(d)(2)(A). A demand for attorney's fees is properly deemed a 'claim' because it is "collateral to the main cause of action," rather than wholly dependent upon it, and thus "uniquely separable from the cause of action" asserted in the underlying pleadings. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 277 (1994) (quoting *White v. N.H. Dep't. of Emp. Sec.*, 455 U.S. 445, 451–52 (1982)). This follows, at least, from the fact that a claim for attorney's fees does not ripen until final judgment. *See White*, 455 U.S. at 451–52; Fed. R. Civ. P. 54(d)(2)(B)(ii). While the rules might conceivably require a litigant to assert this newly accrued

---

[6] The Court notes two honorable mentions: in bankruptcy proceedings, "a request to determine *the amount* of a . . . claim may be made [or must be made, depending on the context] by motion," Fed. R. Bankr. P. 3012(b)–(c) (emphasis added); and in habeas practice, a "prisoner in custody under sentence of a [federal] court . . . *claiming* the right to be released . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence," 28 U.S.C. § 2255 (emphasis added). Ultimately, however, neither of these really fits the bill: the bankruptcy motion does not itself assert the "claim," which must be separately set forth in a pleading-like "Proof of Claim," *see* Fed. R. Bankr. P. 3001; and a motion to amend a sentence is merely a "continuation of the original criminal action," Rules Governing § 2255 Proceedings 1 advisory committee's note, and thus likewise refers back to the charging document, *see United States v. Thomas*, 713 F.3d 165, 169 (3d Cir. 2013).

claim in a separate civil action, common sense dictates that the request should be heard by the same court that just presided over the predicate dispute; thus, a motion provides a fitting, practical vehicle for raising the issue. The fact remains, however, that "a claim for attorney's fees is not part of the merits of the action to which the fees pertain." *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 200 (1988). That is why one properly calls it a "claim."

By contrast, "a motion for a preliminary injunction is not a separate claim that can be severed from the underlying claim" in the pleadings. *Capriole v. Uber Techs., Inc.*, 991 F.3d 339, 343 (1st Cir. 2021). "The purpose of a preliminary injunction is to preserve the status quo, freezing an existing situation so as to permit the trial court, upon full adjudication of the case's merits, more effectively to remedy discerned wrongs." *CMM Cable Rep., Inc. v. Ocean Coast Props., Inc.*, 48 F.3d 618, 620 (1st Cir. 1995). A motion for preliminary injunction is thus not a "claim" that can, in a meaningful sense, pre-exist its assertion. *Cf. Lab. Rels.*, 844 F.3d at 326. Rather, it is a procedural tool, internal to the lawsuit, used to "preserve[] the court's ability to grant final relief." *See Together Emps. v. Mass Gen. Brigham Inc.*, 19 F.4th 1, 7 (1st Cir. 2021).

Yet another clue that a motion for a preliminary injunction is not a "claim" within the meaning of section 1252(g) is that the operation of that provision is to withdraw courts' "jurisdiction" over certain subject matter. *See* 8 U.S.C. § 1252(g). "Jurisdiction . . . is a word of many, too many, meanings." *Wilkins v. United States*, 598 U.S. 152, 156–57 (2023) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510 (2006)). Nevertheless, section 1252(g) clearly refers to subject matter jurisdiction, *see Kong v. United States*, 62 F.4th 608, 616 (1st Cir. 2023) (referring to section 1252(g) as a "jurisdiction-limiting provision[]" in the context of a motion to dismiss for lack of subject matter jurisdiction), a point made especially clear by the immigration statutes'

separate treatment of remedial limitations, *see Biden v. Texas*, 597 U.S. 785, 799–800 (2022) (distinguishing section 1252(g) from section 1252(f)(1)).

As the Court has previously pointed out, it is most unusual to talk about a court's separate subject matter "jurisdiction" over a "motion." *Quichimbo Sumba*, 2026 WL 395033, at *4 (citing *Badgerow v. Walters*, 596 U.S. 1, 15 (2022)). For example, in *Badgerow v. Walters*, the Supreme Court likewise rejected as "simply bizarre" a reading of the Federal Arbitration Act that would have dispensed jurisdiction to hear individual "motions."[7]  596 U.S. 1, 14–15 (2022). In so holding, the *Badgerow* Court stated the obvious: "[a] motion . . . is part of a case actually in court. Jurisdiction to decide the case includes jurisdiction to decide the motion." *Id*. at 15. Defendants here make the inverse mistake: by assigning an unusual meaning to the word "claim," they misread section 1252(g) to *withdraw* jurisdiction on a motion-by-motion basis, even where the Court undisputedly *has* jurisdiction over the claims found in the complaint.

Defendants indeed acknowledge that, "[i]n many if not most instances, a court's jurisdiction to decide a motion will derive from and thus be coextensive with its jurisdiction to decide the cause(s) of action set forth in the complaint" but nevertheless argue that this is "not always" the case. Dkt. 23 at 10. Defendants point to the Supreme Court's decision in *Department of Education v. California*, 604 U.S. 650 (2025), and summarize: "a district court might have jurisdiction over a claim or set of claims under the APA involving federal funding. But that does not mean that it also has jurisdiction to grant a motion seeking an order requiring the defendant agency to pay money," Dkt. 23 at 10. But that misstates the holding: in *California*, the Supreme Court preliminarily concluded that the district court lacked "jurisdiction to adjudicate [the] claims"

---

[7] Further demonstrating the terminological boundary policed between dependent motions and independent claims, an application to enforce an arbitration agreement is typically styled as a "motion" when presented defensively within a lawsuit, *see* 9 U.S.C. §§ 3, 6, but as a "petition" when presented as a standalone action, *see id.* § 4.

upon which its order was based, thus making the district court's order (preliminarily) improper by extension. *See Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 606 U.S. —, 145 S. Ct. 2658, 2658 (2025) (citing *California*, 604 U.S. at 651); *see also California v. U.S. Dep't of Educ.*, 2025 WL 3165713, at *14–15 (D. Mass. Nov. 13, 2025) (following the Supreme Court's decision, dismissing that part of the case for lack of subject matter jurisdiction). *California* thus demonstrates the Court's point: jurisdiction attaches at the level of the "claim[]." *See Nat'l Insts. of Health*, 145 S. Ct. at 2658.

Defendants' most interesting argument for enlarging the usual meaning of the word "claim" continues to rely on section 1252(g)'s somewhat challenging, prepositional-phrase mention of the All Writs Act, from which this Court would normally draw authority (rather than jurisdiction, in the strict sense) to issue a preliminary injunction. *See Quichimbo Sumba*, 2026 WL 395033, at *2 ("[S]ection 1252(g)'s mention of [the All Writs Act], in an otherwise jurisdictionally minded provision, warrants some explanation."). Because the All Writs Act is essentially a remedial statute—and, according to Defendants, exclusively so—Defendants assert that the word "jurisdiction" in section 1252(g) must encompass remedies, which, in turn, could bear on what can constitute a "claim." *See* Dkt. 23 at 9–14.

In denying Defendants' motion to dissolve the temporary restraining order, the Court offered one explanation for why section 1252(g), a "jurisdiction-limiting provision[,]" *Kong*, 62 F.4th at 616, refers to the remedial-sounding All Writs Act: section 1252(g), "with its clear statement regarding the All Writs Act[,] . . . withdraw[s] courts of appeals' prospective jurisdiction under the All Writs Act for purposes of staying removal," *Quichimbo Sumba*, 2026 WL 395033, at *2–4. Rather than rehash the full reasoning behind that conclusion, the Court will directly address Defendants' three main objections to it.

First, Defendants argue that the Court improperly distinguishes between section 1252(g)'s effect on courts of appeals versus district courts. *See* Dkt. 23 at 11–13 ("[T]his distinction does not appear in the text of § 1252(g), which refers to any 'court'—not just the courts of appeals."). But that distinction follows directly from the workings of the referenced statutes themselves. A jurisdiction-stripping statute, even one applicable to all "court[s]," cannot withdraw jurisdiction that the "court" does not otherwise already have. *See* 8 U.S.C. § 1252(g). For example, section 1252(g) also strips jurisdiction "notwithstanding . . . title 28 . . . section[] 1361," *id.*, a statute that usually grants "district courts . . . original jurisdiction of any action in the nature of mandamus," 28 U.S.C. § 1361. As a result, this language in section 1252(g), read in isolation, does not itself directly impact the jurisdiction of courts of appeals. Likewise, the All Writs Act differently empowers district courts and courts of appeals. *See Quichimbo Sumba*, 2026 WL 395033, at *4 (D. Mass. Feb. 12, 2026) ("[D]istrict courts are generally unaccustomed to issuing orders in the absence of an underlying case or controversy with 'perfected' jurisdiction." (quoting *FTC v. Dean Foods Co.*, 384 U.S. 597, 603 (1966))). Thus, it makes sense that the practical effect of stripping jurisdiction otherwise provided under that statute should be different for each of the two species of "court."

Next, Defendants argue that the Court misattributes the source of courts of appeals' prospective jurisdiction to the All Writs Act. *See* Dkt. 23 at 12–14 & n.4 ("The All Writs Act does not provide—and never provided—a 'jurisdictional foundation' for anything." (quoting *Quichimbo Sumba*, 2026 WL 395033, at *3)). But in so arguing, Defendants only echo the dissenters' main objection in *FTC v. Dean Foods Co.*, 384 U.S. 603 (1966):

> [The majority] finds jurisdiction in the courts of appeals by reason of the All Writs Act: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. s 1651(a).
>
> This is, in my opinion, a totally unjustified employment of the All Writs Act. That Act is an implementing statute, designed to authorize the courts to supply deficiencies in procedure so as to enable them effectively to exercise their jurisdiction. The Act is abused where, as here, it is contorted to confer jurisdiction where Congress has plainly withheld it.

*Id.* at 622 (Fortas, J., dissenting). This Court need not endorse the complex (and admittedly, sometimes difficult to follow) jurisprudence of the *Dean Foods* Court to appreciate, as did the dissent, that it interpreted the All Writs Act "to confer jurisdiction," *id.*, notwithstanding any logical contradiction that invites. Against that backdrop, it is perfectly understandable that Congress would include the All Writs Act on a list of jurisdictional statutes in this jurisdiction-stripping provision, *cf. Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 233 ("We normally assume that Congress is 'aware of relevant judicial precedent.'" (quoting *Merck & Co. v. Reynolds*, 559 U.S. 633, 648 (2010))), notwithstanding any other authority with which *Dean Foods* and its progeny might be in tension.

Lastly, and relatedly, Defendants argue that the Court has mis-explained why courts of appeals retain the power to issue stays of removal, notwithstanding section 1252(g):

> But, critically, that is not because § 1252(g) had no effect on the remedial scope of the All Writs Act. It is because § 1252(g) applies "*[e]xcept as provided in this section.*" *See* 8 U.S.C. § 1252(g) (emphasis added). And "this section"—namely, § 1252—provides that a court of appeals may "stay the removal of an alien pending the court's decision on [a petition for review of a final order of removal]." 8 U.S.C. § 1252(b)(3)(B).

Dkt. 23 at 13–14 (alterations in original). But section 1252(b)(3)(B) does not "provide[] that a court of appeals may" stay an order of removal. *Cf. id.* It states, in full: "Service of the petition on the officer or employee does not stay the removal of an alien pending the court's decision on the petition, unless the court orders otherwise." 8 U.S.C. § 1252(b)(3)(B). Read literally, it does

nothing more than "repeal[] the presumption of an automatic stay." *Nken*, 556 U.S. at 425; *see also id.* at 427 ("An appellate court's power to hold an order in abeyance while it assesses the legality of the order has been described as 'inherent,' preserved in the . . . All Writs Act." (quoting *In re McKenzie*, 180 U.S. 536, 551 (1901))). Moreover, if one were to accept Defendants' argument-by-negative-implication that section 1252(b)(3)(B) "provide[s]" courts of appeals "jurisdiction" to issue stays of removal, *see* 8 U.S.C. § 1252(g), then one would likewise have to conclude that section 1252(f)(2) provides "court[s]" the power to "enjoin the removal of [an] alien," *see id.* § 1252(f)(2).[8] In reality, Defendants' argument merely replicates their broader error: a motion for stay pending review, raised collaterally in the context of appellate review—much like a motion for preliminary injunction, raised in the context of a civil action—is not a separate "claim" as to which section 1252(g) might withdraw "jurisdiction" or else "except" from its reach. *See* 8 U.S.C. § 1252(g); *see also Merrill v. Milligan*, 142 S. Ct. 879, 879 (2022) (Kavanaugh, J., concurring) ("The stay order is not a ruling on the merits, but instead simply stays the District Court's injunction *pending a ruling on the merits*. . . . The stay will allow this Court to decide the merits in an orderly fashion . . . and ensure that we do *not* have to decide the merits on the emergency docket. To reiterate: The Court's stay order is not a decision on the merits." (emphases in original)).

Perhaps an easier explanation for 1252(g)'s mention of the All Writs Act would just be that it reflects the "lamentably common belt-and-suspenders approach" to drafting statutes. Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 176–77 (2012). *But see Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("It is [a court's] duty 'to give effect, if possible,

---

[8] "Notwithstanding any other provision of law, no court shall enjoin the removal of any alien pursuant to a final order under this section unless the alien shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law." 8 U.S.C. § 1252(f)(2).

to every clause and word of a statute.'" (quoting *United States v. Menasche*, 348 U.S. 528, 538–39 (1955))).  Either way, Defendants propose no alternate solution that convincingly reconciles section 1252(g)'s "notwithstanding" reference without doing violence to the provision's main clause: "no court shall have jurisdiction to hear any cause or claim . . . ."  *See* 8 U.S.C.§ 1252(g). A motion for preliminary injunction is not a "claim" over which a Court can have distinct "jurisdiction."

### b.  Plaintiffs' Motion Does Not "Arise From" the Execution of Mr. Quichimbo's Removal Order

Even if one were to say that Plaintiffs' motion for a preliminary injunction is a "claim," in order for section 1252(g) to apply, that "claim" would still need to "aris[e] from," as relevant here, the Government's "decision or action . . . to . . . execute [Mr. Quichimbo's] removal order[]." 8 U.S.C. § 1252(g).  It does not.[9]

Section 1252(g) is a "narrow" provision, *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999) [hereinafter *AADC*], that "applies only to three discrete actions that the [Government] may take: [its] 'decision or action' to 'commence proceedings, *adjudicate* cases, or *execute* removal orders,'" *id.* at 482 (emphases in original) (quoting 8 U.S.C. § 1252(g)).  As between a litigant's claim and those three insulated actions, a "but-for" relationship is insufficient for section 1252(g) to apply.  *Kong*, 62 F.4th at 613; *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) ("[In *AADC*,] [w]e did not interpret [section 1252(g)] to sweep in any claim that can technically be said to 'arise from' the three listed actions . . . .  Instead, we read the language to refer to just those three specific actions themselves." (citing *AADC*, 525 U.S. at 482–83)); *Aguilar*

---

[9] Notwithstanding the Court's engagement with this thought experiment, it bears repeating that it is a category error to ask from what external subject matter a motion for preliminary injunction "arises."  The motion arises from the case.  *See Badgerow*, 596 U.S. at 15 ("A motion is part of a case.").

*v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 10 (1st Cir. 2007) ("[I]f Congress had intended to accomplish so far-reaching a result, it could have used broader language. . . . For example, Congress would have used the term 'related to' instead of 'arising from.'" (discussing a neighboring provision using the same nexus language, section 1252(b)(9))).

As a result, section 1252(g) does not bar claims that are "plainly collateral to [Immigration and Customs Enforcement's ("ICE's")] prosecutorial decision to execute [a] removal." *Kong*, 62 F.4th at 617. Accordingly, "[w]hen asking if a claim is barred by § 1252(g), courts must focus on the action being challenged" rather than the "practical effect" of the "relief sought." *Canal A Media Holding, LLC v. U.S. Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1257–58 (11th Cir. 2020) (concluding that a visa-denial claim against USCIS was not barred under section 1252(g) even though "the relief sought . . . might have the practical effect of mooting the [co-plaintiff's] removal proceedings" (brackets and quotation marks removed)).

Although neither the First Circuit nor the Supreme Court has fully explained when a claim is collateral for purposes of section 1252(g), in other administrative contexts, a legal claim is deemed "collateral" to an agency action where it does not "address the sorts of . . . matters an agency often resolves on its way to a . . . decision." *See Axon Enter., Inc. v. FTC*, 598 U.S. 175, 193 (2023). In *AADC*, the Supreme Court spoke directly to the kinds of "discretionary determinations," 525 U.S. at 485, and attendant considerations that section 1252(g) was designed to shield from review: "[s]ection 1252(g) was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *Id.* at 485 n.9. The *AADC* Court further explained:

> [T]he decision to prosecute is particularly ill-suited to judicial review. Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake.

*Id.* at 490–91 (quoting *Wayte v. United States*, 470 U.S. 598, 607 (1985)).

Plaintiffs' motion does not implicate a single factor or consideration that might bear on "ICE's prosecutorial decision." *See Kong*, 62 F.4th at 617. Plaintiffs do not question ICE's legal authority to execute Mr. Quichimbo's removal order.[10] Nor do they question ICE's "discretionary determination[]" to do so.[11] *Cf. AADC*, 525 U.S. at 485. Adjudicating Plaintiffs' motion will not require "subjecting [ICE's] motives and decisionmaking to outside inquiry." *Id.* at 490 (quoting *Wayte*, 470 U.S. at 607). Indeed, the only connection between Plaintiffs' motion and the execution of Mr. Quichimbo's removal order is the "practical effect" of the "relief sought."[12] *Cf. Canal*, 964 F.3d at 1257. As a result, Plaintiffs' motion does not "aris[e] from the decision . . . to . . . execute [his] removal order[]." *See* 8 U.S.C. § 1252(g).

---

[10] Such a claim would not necessarily fail. *See Kong*, 62 F.4th at 617 (concluding that a challenge to the "lawfulness" of a related agency action was not foreclosed under section 1252(g)).

[11] Defendants cite a recent, unpublished Fifth Circuit decision stating that "[a] request for stay of removal is a challenge to a removal order." *Imran v. Harper*, 2026 WL 93131, at *1 (5th Cir. Jan. 13, 2026). In *Imran*, a habeas petitioner challenged his detention under *Zadvydas v. Davis*, 533 U.S. 678 (2001), and sought a "request for a stay of removal '. . . to preserve the status quo so the court can address his detention-related claim.'" 2026 WL 93131, at *1 (quoting the petitioner). While out-of-circuit decisions are obviously non-binding, *see United States v. Lopez*, 890 F.3d 332, 341 (1st Cir. 2018), the Court notes that it agrees with the Fifth Circuit's conclusion, though would have explained it differently: a *Zadvydas* challenge against detention presupposes that removal is not "reasonably foreseeable." *See Zadvydas*, 533 U.S. at 699. It would make little sense to stay removal to preserve jurisdiction over a claim predicated on the assertion that removal is impossible. Stripped of this pretense, one could either conceive of the *Imran* petitioner's request as an independent claim, barred by section 1252(g), or as a motion, unmoored from (and so unjustified by) the claim upon which it is based.

[12] The practical effect, moreover, would not even necessarily be to prevent Mr. Quichimbo's removal, except insofar as it might predate USCIS's BFD.

2. **Plaintiffs' Motion Is Related to Their Claims**

Accepting that jurisdiction is properly analyzed at the level of the claim, rather than at the level of the motion, still leaves open the question of whether Plaintiffs' motion is properly "part of [their] case." *See Badgerow*, 596 U.S. at 15. Defendants argue that "the injury claimed in Plaintiffs' motion (ICE's execution of Quichimbo's removal order) is fundamentally different from the wrongful conduct alleged in the complaint (USCIS's delay in adjudicating his T visa application)" and that, as a result, the Court's jurisdiction over the claims in Plaintiffs' complaint does not empower it to grant Plaintiff's motion. Dkt. 23 at 5–7.

Defendants misstate the inquiry. Under the All Writs Act, federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. One such accepted usage is that "a federal court may issue an injunction as a means to preserve its jurisdiction." *Rossello-Gonzalez v. Calderon-Serra*, 398 F.3d 1, 14 (1st Cir. 2004). This aim is directly connected to the idea that preliminary relief is appropriate to prevent "irreparable injury," as such an irreversible result effectively voids "the court's power to render a meaningful decision." *See* 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2947 (3d ed. 2013).

Although often the case, a motion for preliminary relief need not necessarily present the exact same suite of facts and legal issues raised for final adjudication, so long as "the motion is based on facts closely related to the facts in the complaint." *See Adair v. England*, 193 F. Supp. 2d 196, 200 (D.D.C. 2002) (citing *Equal Emp. Opportunity Comm'n v. Locs. 14 & 15, Int'l Union of Operating Eng'rs*, 438 F. Supp. 876, 879–80 (S.D.N.Y. 1977) (granting preliminary injunction to prevent retaliation against witnesses in discrimination case, in part, "to preserve the status quo and protect [the court's] proceedings in all germane matters")).

Likewise, preliminary relief need not always perfectly mirror final relief, so long as there is a clear, logical "relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *See Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994); *compare also, e.g.*, *Deckert v. Indep. Shares Corp.*, 311 U.S. 282, 290 (1940) (concluding that an injunction preventing the transfer of funds "was a reasonable measure to preserve the status quo pending final determination" of claims for recission and restitution), *cited with approval in*, *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 325 (1999), *with De Beers Consol. Mines v. United States*, 325 U.S. 212, 216, 218–20 (1945) (finding improper an injunction freezing the defendants' assets, where the district court would have had no authority to issue a final judgment disposing of property but rather only "restrain the future continuance of actions or conduct intended to monopolize or restrain commerce"); *see also De Beers*, 325 U.S. at 220 & n.11 (distinguish *Deckert* as a case where the injunction was issued "with respect to . . . the subject of the provisions of [a] [potential] final decree in the cause").

Preliminary relief may therefore be justified to prevent an ultimate harm flowing from challenged action or inaction, even where final judgment will not necessarily eliminate that harm.[13] An illustration is helpful: in *Skinner v. Switzer*, 562 U.S. 521 (2011), the Supreme Court stayed the execution of a man pending its decision regarding his claim, under 42 U.S.C. § 1983, seeking post-conviction DNA testing. *Id.* at 527–29 & n.6. Importantly, the Court recognized that, although the sought-after "test results might prove exculpatory, that outcome [was] hardly inevitable" because the "results might prove inconclusive or they might further incriminate [the

---

[13] Put another way, if a plaintiff seeks X as final relief, and if X might reasonably stop Y from happening, then a court may be justified in restraining Y while it comes to a meaningful decision about the plaintiff's entitlement to X, pending other equitable considerations.

plaintiff]."[14]  *Id.* at 534.  Under Defendants' construction, the *Skinner* Court's use of stay under these circumstances would have been improper because "the injury claimed in [the plaintiff's] motion ([Texas's] execution of [his] [death penalty sentence])" would be deemed "fundamentally different from the wrongful conduct alleged in [his] complaint ([Texas's] [refusal to conduct DNA testing])."  Dkt. 23 at 6.  Obviously, this is wrong: the *Skinner* Court properly exercised its authority and stayed the plaintiff's execution "as a means to preserve its jurisdiction," *see Rossello-Gonzalez*, 398 F.3d at 14, over the plaintiff's factually adjacent appeal, which would have otherwise been mooted by his death.

The same logic governs here.  Plaintiffs allege that USCIS has unreasonably delayed making a BFD on their T visa applications.  There is a clear "relationship" between that asserted conduct and Mr. Quichimbo's potential removal, "the injury claimed in [Plaintiffs'] motion." *Cf. Devose*, 42 F.3d at 471.  And although it is "hardly inevitable" that a BFD would avert removal, *cf. Skinner*, 562 U.S. at 534, the Court may nonetheless act to "preserve its jurisdiction," *Rossello-Gonzalez*, 398 F.3d at 14.

### B. Plaintiffs Are Unlikely to Succeed on Their Claims

Finally reaching the merits, the Court concludes that Plaintiffs have not shown a likelihood of success on their unreasonable delay claims.  In substance, Plaintiffs allege that "Defendants have a clear, nondiscretionary duty to determine whether Plaintiffs' [T visa] applications qualify for a BFD" and that "Defendants have unreasonably delayed performing this duty."  Dkt. 1

---

[14] Indeed, this point was essential to the Court's reasoning because, otherwise, success on the plaintiff's claim would have "'necessarily impl[ied]' the invalidity of his conviction" and required that his claim be brought in habeas, *Skinner*, 562 U.S. at 534 (quoting *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)), an avenue that was likely foreclosed to him, *see Skinner v. Switzer*, 2010 WL 273143, at *1 (N.D. Tex. Jan. 20, 2010) (describing the history of the plaintiff's earlier, unsuccessful habeas petition and noting that the defendant raised it as an alternate ground for dismissal).

¶¶ 25–37.  Plaintiffs rely on the USCIS regulation governing T visa BFDs, which states in relevant part:

> (a) ***Bona fide determinations for principal applicants for T nonimmigrant status.*** If an Application for T Nonimmigrant Status is submitted on or after August 28, 2024, USCIS will conduct an initial review to determine if the application is bona fide.
>
>> (1) ***Request for evidence.***  If an Application for T Nonimmigrant Status was pending as of August 28, 2024, and additional evidence is required to establish eligibility for principal T nonimmigrant status, USCIS will issue a request for evidence, and conduct a bona fide review based on available evidence.
>>
>> (2) ***Initial review criteria.***   After initial review, USCIS will deem an Application for T Nonimmigrant Status bona fide if [the application is properly filed and the applicant passes an initial background check].

8 C.F.R. § 214.205(a)(1)–(2) (emphases in original).

Plaintiffs' applications were submitted on August 15, 2024.  Dkt. 1-3.  Thus, they are outside the class of applicants (those who "submitted on or after August 28, 2024") entitled to a T visa BFD.  *See* 8 C.F.R. § 214.205(a).  Plaintiffs argue that the "structure of the regulation contemplates review followed by one of several outcomes: approval, issuance of an RFE, denial, or issuance of a BFD."  Dkt. 21 at 5.  However, that misunderstands the history of USCIS's decision-making process with respect to T visa applications.  Prior to the 2024 rule change, USCIS typically made only full merits determinations on T visa applications.  *See Classification for Victims of Severe Forms of Trafficking in Persons; Eligibility for "T" Nonimmigrant Status*, 89 Fed. Reg. 34864, 34875 (April 30, 2024).[15]  In implementing the new BFD process, USCIS limited

---

[15] *See* 89 Fed. Reg. at 34875 ("Although an extensive BFD process was codified in the 2016 IFR, such a process has not been implemented in the last decade outside of litigation cases due to resource constraints and the inefficiencies of the prior process.  Under the extensive BFD review process set forth in the IFR, USCIS generally adjudicated the merits of T nonimmigrant applications in the same amount of time that it would take to issue a BFD. Therefore, it has generally been more efficient to adjudicate the T visa application alone than to conduct both a BFD review and full adjudication of the same application.").

the benefit of an "initial review" to "application[s] filed on or after the effective date." *See id.*; *see also* 8 C.F.R. § 214.205(a). For applicants who filed before that date, the additional benefit under the new system is more limited: in the event an application requires additional evidence, the applicant might now receive a BFD as a potential stop-gap measure, rather than be left with no protection during the protracted discovery period. *See* 89 Fed. Reg. at 34875; 8 C.F.R. § 214.205(a)(1). Plaintiffs argue that the regulation "does not contemplate indefinite non-review," Dkt. 21 at 5, and the Court generally agrees. However, the review to which Plaintiffs are eventually entitled is a merits determination, rather than a BFD, and Plaintiffs have made no claim that their merits determination is unreasonably delayed.[16] This conclusion is all but fatal for Plaintiffs' motion because "[l]ikelihood of success is the main bearing wall of the four-factor framework." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 16 (1st Cir. 1996).

## C.    Plaintiffs' Irreparable Harm Remains Uncertain

It may perhaps then be a small reprieve that the Court finds likewise doubtful Plaintiffs' motion with respect to irreparable harm, at least insofar as it is based on Plaintiffs' T visa applications' being mooted by Mr. Quichimbo's removal.[17] At the February 10, 2026 hearing, the parties disagreed as to whether Mr. Quichimbo's removal would moot his T visa application: Plaintiffs took the position that it would moot the application; Defendants took the position that it would not. *See* Dkt. 19 at 1. After the hearing, the parties submitted a joint status report, indicating that they had conferred and reached consensus that removal would moot the application. *Id.*

---

[16] Defendants argue that Plaintiffs' merits determination would not be considered unreasonably delayed. Dkt. 23 at 16–19. The Court expresses no opinion on this issue.

[17] The Court assumes that, if Mr. Quichimbo's T visa application were to become moot, the same result would obtain for his family's derivative applications. *See generally* 8 C.F.R. § 214.211. The Court likewise assumes that, as a result, Plaintiffs' claims of unreasonable delay in this Court would become non-justiciable.

Understandably, having reached open agreement, neither side substantially briefed the issue. *See* Dkt. 21 at 8–9. However, the Court notes that the relevant regulation states that "an applicant must be physically present in the United States, American Samoa, the Commonwealth of the Northern Mariana Islands, or at a port-of-entry thereto on account of such trafficking" and that "USCIS considers the applicant's presence in the United States *at the time of application*." 8 C.F.R. § 214.207 (emphasis added). It is true that an individual applying for an immigration benefit generally "must establish that he or she is eligible for the requested benefit at the time of filing the benefit request and must continue to be eligible *through adjudication*." *Id.* § 103.2(b)(1) (emphasis added). But the Court fails to see how that leads to a continuous physical presence requirement. *Cf. id.* § 245.23(a)(4) (establishing a continuous presence requirement for *current* T visa holders applying for further adjustment of status). To wit, if a statute or regulation were to say that any person under eighteen years old as of March 5, 2026, is entitled to a certain benefit, an individual then seventeen years old would nonetheless continue to qualify as a "person less than eighteen years old as of March 5, 2026," even after her eighteenth birthday. *Cf. id.* § 236.22(b)(7) (as to requests for Deferred Action for Childhood Arrivals, establishing that "[t]he requestor must have been born on or after June 16, 1981.").

Finding no likelihood of success and uncertainty as to the nature of Plaintiffs' harm, the Court need not address the final two factors. *See Together Emps.*, 19 F.4th at 7.

### III.   <u>Conclusion</u>

For the reasons stated herein, Plaintiffs' motion for a preliminary injunction is DENIED.

**So Ordered.**

/s/ Brian E. Murphy
Brian E. Murphy
Judge, United States District Court

Dated:  March 5, 2026